# McDOWELL MANUFACTURING CO., DIVISION OF ALCO STANDARD CORPORATION, Petitioner,

### v.

# NATIONAL LABOR RELATIONS BOARD, Respondent.

## No. 73–1123.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 18, 1973.

Decided Feb. 26, 1974.

---

Robert H. Shoop, Jr., Thorp, Reed & Armstrong, Pittsburgh, Pa., for petitioner.

Fredric Sagan, N. L. R. B., for respondent; Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Assistant Gen. Counsel, Allison W. Brown, Jr., Atty., N. L. R. B., Washington, D. C., on brief.

Before WEICK and PECK, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

PER CURIAM.

This matter is brought to us by the Petition of McDowell Manufacturing Company (McDowell) for review and denial of enforcement of a decision and order of the National Labor Relations Board entered September 7, 1972, and reported at 198 NLRB No. 187 (1972). The Board asks enforcement of its order.

We deny enforcement.

After much travail and contesting, including one strike and threat of another,

both fostered by unions representing its employees, McDowell agreed to inclusion of a union security clause in its collective bargaining agreement with International Union of Operating Engineers, Local 66, AFL–CIO. This union had won the bargaining rights of McDowell's employees from District 50, United Mine Workers. The union security clause provided:

> "It shall be a condition of continued employment that all employees covered by this Agreement who were employed prior to the effective or execution date of this Agreement, whichever is later, who are not members of the Union shall thirty-one days after the effective or execution date of this Agreement, whichever is later, become and remain members of the Union in good standing."

In conformity with and obedient to this provision, McDowell terminated two of its employees who had not joined Local 66. After such termination, the union sought to have these employees reinstated as such and upon McDowell's refusal, the union filed the charges upon which the involved complaint was issued.

After an evidentiary hearing, an Administrative Law Judge decided that McDowell had violated Section 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (3), by using the union security provision as a basis for terminating two employees, Hunter and Holes. Both of these employees knew of the union security clause; and the charging party—Local 66—did not claim that their failure to become members of the union was attributable to any action, or inaction, on the part of McDowell. But the Board concluded:

> "Under the circumstances, Respondent [McDowell] stood in the same position as the Union with respect to enforcement of the union-security clause and thus had to advise Hunter and Holes in explicit terms exactly what their current obligations were under the contract."

Enforcement of the Board's order would require adoption of the foregoing as a rule of law. This we decline to do.

The involved employees were both on layoff status at the time Local 66 took over the bargaining rights of McDowell's employees, and obtained the union security clause. Their layoffs were both the result of work connected injuries. Hunter's layoff commenced in October 1968, and except for a period of about ten days in October and November 1969, he had not since worked for McDowell, although he had been quite active in union affairs. Holes' layoff status began in July of 1968, and except for one day in November 1969, he had not returned to work up to the time of his discharge. The record does not disclose whether both Hunter and Holes were receiving workmen's compensation benefits. They continued, however, to receive vacation pay, together with hospitalization and life insurance benefits provided by McDowell.

The evidence showed that McDowell generally manufactured only to fill specific orders without accumulating large inventories. In February of 1971 it received orders which prompted it to recall approximately 21 employees then on a layoff status. The union's insistence on strict enforcement of the union security clause during the recall added greatly to delay in getting into production, and according to the Administrative Law Judge, "caused substantial production problems, including some additional expense for overtime." At the union's request, McDowell prepared a list of the employees to be recalled and this list was submitted to the union for its designation of the employees who were in good standing. The names of Hunter and Holes were included in this list and next to their names, the union commented, "Have no record of application for." [1] Hunter and Holes were both termi-nated by a letter of March 21, 1971. As to the reasons for this action, the Administrative Law Judge said:

"The Company's purpose in discharging Hunter and Holes, as stated by its president at the hearing, were: (1) to bring a resolution to questions regarding the application of the union security clause and thereby avoid future financial burdens and disruptions in production which might occur if the questions were left unresolved; (2) to terminate existing costs involved by way of insurance premiums and holiday and vacation pay for Hunter and Holes; and (3) to enforce union security requirements of the contract which Local 66 should have invoked but had failed to do."

This was his conclusion:

"In sum, I find that the Company terminated Hunter and Holes for discriminatory reasons, to encourage membership in Local 66, and that this discrimination may not be condoned under the union security exception in Sections 7 and 8(a)(3) because no adequate notice affording them reasonable opportunity to comply with the union security requirements of the collective bargaining agreement was given. Accordingly, I find that the terminations were and are unfair labor practices forbidden by Section 8(a)(3) and (1) of the Act."

■ We do not believe that because McDowell had a companion reason for terminating Hunter and Holes—the discontinuance of benefits to the employees —its adherence to the union security provision was illegal under the Act.

We conclude that the Board's legal conclusions were, in the context of the matter here involved, unwarranted and its order is not supported by substantial evidence.

Enforcement is denied.

---

1. The Administrative Law Judge's findings included:

"It is uncontroverted that they never satisfied the initiation fee and dues requirements for membership in Local 66, and this record reveals no other prerequisite for membership. Failure to obtain such membership was the reason stated for their termination."